UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JACOB S. SILVERMAN,

    Plaintiff,

    v.

DUANE CHRISTIAN, et al.,

    Defendants.

Case No. 18-01115 BLF (PR)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

(Docket No. 35)

Plaintiff, a pretrial detainee, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, against jail officials at the Humboldt County Correctional Facility (the "Facility") for violating his First Amendment right to petition the government for redress of grievances based on their refusal to allow him to file grievances. Defendants Capt. Duane Christian and Lt. Dean Flint filed a motion for summary judgment. (Docket No. 35, hereinafter "Mot."[1]) Plaintiff filed an opposition, (Docket No. 40), along with an exhibit, (Docket No. 40-1), and Defendants filed a reply, (Docket No. 42).

---

[1] In support of their motion, Defendants submit the declarations and exhibits from the following: defense-counsel David R. Norton, (Docket No. 35-1), Defendant Dean Flint, (Docket No. 35-3), and Defendant Duane Christian, (Docket No. 35-4).

1

For the reasons discussed below, Defendants' motion for summary judgment is **GRANTED**.

**DISCUSSION**

I. **Statement of Facts**[2]

    A. **The Facility's Inmate Grievance Procedure**

The Facility has established an Inmate Grievance Procedure (the "Policy") pursuant to California Code of Regulations Title 15, section 1073. (Christian Decl. ¶ 2, Ex. A at 1, "Humboldt County Sheriff's Office Custody Services Division, Policies and Procedures.") The Policy was established "to provide a consistent and equitable method of handling inmate complaints… to resolve grievances within a reasonable time limit." (*Id.*) Inmates may fill out an inmate grievance form when they have a complaint relating to conditions of confinement, including but not limited to: medical/dental care, classification actions (except disciplinary action), program participation, telephone access, mail, visiting, food, clothing and bedding, or other custody related matters. (*Id.* ¶ 3, Ex. A at 1-2.) The Policy states that grievances "must pertain to a complaint that has occurred within the past two (2) weeks of filing the grievance." (*Id.*, Ex. A at 2.)

Generally, a prisoner seeking to file a grievance must request a grievance form from the Housing Officer. (Christian Decl. ¶ 3, Ex. A at 3.) The Housing Officer will ask the inmate the subject matter of the grievance to see if she/he can resolve the issue prior to an inmate filing a grievance. (*Id.*) If the inmate chooses to file the grievance, he must submit the completed form to the Housing Officer, who will then sign and date the grievance in the top right-hand corner and give a copy of it to the inmate. (*Id.*) The Housing Officer then delivers the grievance form to the next level responder so it can be handled pursuant to the Policy. (*Id.*, Ex. A at 4.)

---

[2] The following facts are undisputed unless otherwise indicated.

2

There are three levels at which an inmate grievance can be resolved. (Christian Decl. ¶ 4.) Every attempt is made to resolve the grievance at the first level, which requires a response within five days of receipt. (*Id.*, Ex. A at 2.) If an inmate is unhappy with the resolution at any level, the inmate is entitled to appeal the grievance resolution to the next level until Level Three, which is the final level of appeal. (*Id.*) The grievance shall be responded to within five days, excluding weekends, upon receipt at Level Two and Level Three. (*Id.*) Plaintiff is aware that the Facility has a mechanism for inmates to file grievances and has filed "an abundance" of grievances pursuant to the Policy. (Norton Decl., Ex. A, Silverman Depo. 35:22-36:12, 42:10-13.)

### B. Frivolous Grievance Procedure

Pursuant to California Code of Regulations Title 15, section 1073(b), the Policy includes a procedure to control the submission of excessive grievances. (Christian Decl. ¶ 5, Ex. A at 5-6.) According to Defendants, the Policy is intended to provide safeguards against abuse of the grievance system. (*Id.*) Without these safeguards, staff would be overburdened by having to respond to repetitive and frivolous complaints, time which would be better spent responding to valid, non-frivolous claims. (*Id.*)

The Policy states, "Grievances that are filed by inmates for non-productive purposes, excessive grievances filed on the same issue, grievances that use profanity and/or insulting language, or grievances filed with the intent to undermine or interfere with the grievance process, and that over burden staff with repetitive frivolous complaints will be rejected." (Christian Decl. ¶ 6, Ex. A at 2.) An inmate filing excessive and/or frivolous grievances is given written notice that any further grievances on the matter may subject him to disciplinary action. (*Id.*, Ex. A at 3.) Grievances that are submitted after such notice are forwarded intact, with all copies attached, directly to a Correctional Lieutenant or Facility Manager. (*Id.*)

The Policy further states, "Upon being notified by staff of an inmate who appears to

3

be filing excessive grievances with the intent to undermine or interfere with the grievance process and/or overburden staff with repetitive frivolous complaints, the Staff Lieutenant will review all of the inmate's recent grievances to determine if placement on frivolous grievance watch is appropriate." (Christian Decl. ¶ 7, Ex. A at 5.)

### C. Plaintiff's Grievances

Plaintiff was in custody as a pre-trial detainee at the Facility from approximately September 2016 until October 2018.[3] (Christian Decl. ¶ 8.) In less than a one-month period, from October 12, 2016 through October 30, 2016, Plaintiff filed approximately 17 grievances. (Christian Decl. ¶ 9, Ex. B.) The Facility responded to each of these grievances. (*Id.*) These 17 grievances are summarized as follows:

- On October 12, 2016, Plaintiff filed his first grievance which related to a write-up he had received. (*Id.*; Docket No. 35-4 at 15.)
- On October 15, 2016, Plaintiff filed three separate and unrelated grievances. (Christian Decl. ¶ 10, Ex. B.) The first grievance related to the cleaning supplies that the Facility used. (*Id.*; Docket No. 35-4 at 16-17.) The second grievance related to the appeal process for disciplinary actions. (*Id.*; Docket No. 35-4 at 18.) The third grievance suggested that inmates should have the opportunity to purchase phone cards. (*Id.*; Docket No. 35-4 at 19.)
- On October 17, 2016, Plaintiff filed two grievances. (Christian Decl. ¶ 11, Ex. B.) The first grievance stated, "it would be humane to offer a warm breakfast at this facility twice a week." (*Id.*; Docket No. 35-4 at 20.) The second grievance related to Plaintiff's concerns with the showers. (*Id.*; Docket No. 35-4 at 21.)
- On October 18, 2016, Plaintiff filed four separate grievances. (Christian

---

[3] Plaintiff was committed to the Napa State Hospital for observation and treatment from approximately May 18, 2018 through August 7, 2018. On or about October 25, 2018, Plaintiff was transferred to a facility in Mendocino. (Christian Decl. ¶ 8.)

4

Decl. ¶ 12, Ex. B.) The first grievance complained that there was not a 2016 Penal Code book accessible. (*Id.*; Docket No. 35-4 at 22.) The second grievance related to the air vents and air ventilation. (*Id.*; Docket No. 35-4 at 23.) The third grievance related to Plaintiff's access to a law library. (*Id.*; Docket No. 35-4 at 24.) The fourth grievance related to Plaintiff's request for an indigent inmate packet made on October 10, 2016. (*Id.*; Docket No. 35-4 at 25.)

- On October 19, 2016, Plaintiff filed a grievance regarding alleged "tiny dark metallic lead flakes" in the sink. (Christian Decl. ¶ 13; Docket No. 35-4 at 26.)

- On October 21, 2016, Plaintiff filed two separate grievances. (Christian Decl. ¶ 14, Ex. B.) The first grievance related to documents Plaintiff requested for a court appearance. (*Id.*; Docket No. 35-4 at 27.) The second grievance also related to materials for a court appearance. (*Id.*; Docket No. 35-4 at 28.)

- On October 27, 2016, Plaintiff filed two separate grievances. (Christian Decl. ¶ 15, Ex. B.) The first grievance indicated that Plaintiff believed it was cruel and unusual punishment to be forced to wear a bracelet 24 hours a day without being proven guilty. (*Id.*; Docket No. 35-4 at 29.) The second grievance related to a conflict Plaintiff had with a sergeant regarding mailing out legal documents. (*Id.*; Docket No. 35-4 at 30.)

- On October 29, 2016, Plaintiff filed a grievance that stated, "all indigent inmates who need glasses should be granted glasses and notified of this opportunity." (Christian Decl. ¶ 16; Docket No. 35-4 at 31.)

- On October 30, 2016, Plaintiff filed a grievance regarding the chilled air pressure in the hole and that inmates are threatened for using a blanket.

(Christian Decl. ¶ 17; Docket No. 35-4 at 32.)

After reviewing Plaintiff's grievances filed up to October 30, 2016, the Facility staff determined that the nature and number of grievances Plaintiff had filed warranted placing him on frivolous grievance watch. (Christian Decl. ¶ 18.) Pursuant to the Policy, Defendant Christian, who was the staff lieutenant at the time, sent Plaintiff a memorandum on October 31, 2016, informing him that per the Policy, Defendant Christian would be reviewing each of Plaintiff's grievances to determine which would be accepted and which would be denied. (*Id.*, Ex. C.) The memorandum indicated that based on the nature of grievances filed to date, Defendant Christian believed that many of Plaintiff's grievances were repetitive and frivolous complaints which intended to undermine or interfere with the grievance process and were burdensome to staff. (*Id.*) Accordingly, Plaintiff was on notice that Defendant Christian would be reviewing all his future grievances to determine if they should be processed. (Norton Decl., Ex. A, Silverman Depo. 53:13-54:2.)

From October 31, 2016 until approximately May 2018, staff forwarded all of Plaintiff's grievances to Defendant Christian at the first level of review. (Christian Decl. ¶ 19.) In May 2018, Defendant Christian was notified that the present lawsuit had been initiated against him. (*Id.* ¶ 20.) Therefore, the Facility designated Defendant Flint as the individual to review each of Plaintiff's grievances at the first level of review. (*Id.*; Flint ¶ 2.) From May 2018 through October 2018, staff forwarded all of Plaintiff's grievances to Defendant Flint at the first level of review. (Flint Decl. ¶ 3.) Plaintiff was aware that Defendant Flint had started reviewing his grievances. (Norton Decl., Ex. A, Silverman Depo. 81:6-10.)

Defendants Christian and Flint reviewed each of Plaintiff's grievances to determine whether the grievance was repetitive or frivolous. (Christian Decl. ¶ 19; Flint Decl. ¶ 3.) If the grievance was not deemed frivolous, it was accepted and answered at each level per the Policy. (*Id.*) However, if the grievance was deemed frivolous, it was clearly marked

as rejected and returned to Plaintiff. (*Id.*)

In 2017, Plaintiff filed approximately 100 grievances, 59 of which were answered and 41 of which were rejected and returned as frivolous. (Christian Decl. ¶ 21, Ex. D.) In 2018, Plaintiff filed approximately 196 grievances, 98 of which were answered and 98 were either rejected or returned as frivolous. (*Id.* ¶ 22, Ex. D.) In sum, from October 2016 through October 2018, Plaintiff filed approximately 250 grievances, of which over half were responded to. (Christian Decl. ¶ 23.)

Many grievances were rejected because they were actually requests, such as requests for copies of medical records, for which the Facility has a separate procedure that inmates are required to use. (Christian Decl. ¶ 24.) Others were rejected because they related to the disciplinary process, which is explicitly exempted from the grievance policy and may not be grieved; rather, inmates must appeal disciplinary actions. (*Id.*, Ex. A at 1.)

Defendant Flint generally deemed a grievance as frivolous if it was "repetitive and related to an issue which Plaintiff had previously grieved." (Flint Decl. ¶ 4.) On June 8, 2018, Defendant Flint sent Plaintiff a memorandum advising him that in light of his most recent grievance in which he complained that the Facility was failing to investigate his complaints, any further grievances submitted by Plaintiff in which he alleged that the Facility was failing to look into, investigate, or follow up on his complaints would be immediately denied and returned to him by the Facility Administration. (Flint Decl. ¶ 5, Ex. B.) On June 26, 2018, Defendant Christian sent Plaintiff a memorandum informing him that the Facility would reject all future grievances regarding rejected grievances. (Christian Decl. ¶ 26, Ex. E.) Defendant Christian explained that Plaintiff was not following the appropriate procedure by continuing to grieve issues repeatedly and when dissatisfied with the response, grieving the individuals who answered at various levels. (*Id.*) Defendant Christian informed Plaintiff that if he was dissatisfied with a response to a grievance and it has been appealed through all three levels, Plaintiff had the ability to file a

Writ of Habeas Corpus with the Humboldt County Superior Court. (*Id.*) Defendant Christian further informed Plaintiff that Title 15 of the California Code of Regulations and the Facility's Policy allowed grievances to be rejected at the initial level if deemed to be frivolous, non-productive, repetitive or over burdensome to staff. (*Id.*)

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by

8

his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence presented and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.*

### A. First Amendment

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of meaningful access to the courts extends to established prison grievance procedures. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995); *accord Hines v. Gomez*, 853 F. Supp. 329, 331-32 (N.D. Cal. 1994). This right is subsumed under the First Amendment right to petition the government for redress of grievances, *see id.* at 333, and protects both the filing, *see id.*, and content, *see Bradley*, 64 F.3d at 1279, of prison grievances. Regulations which punish an inmate for using "hostile, sexual, abusive or threatening" language in a written grievance, for example, are not reasonably related to penological interests and therefore violate the First Amendment. *See id.* at 1279-82.

Although there certainly is a right to petition the government for redress of grievances (a First Amendment right), there is no right to a response or any particular

action. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("prisoner's right to petition the government for redress ... is not compromised by the prison's refusal to entertain his grievance."). Furthermore, a prison official's failure to process grievances, without more, is not actionable under § 1983. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that prisoner's claimed loss of a liberty interest in the processing of his appeals does not violate due process because prisoners lack a separate constitutional entitlement to a specific prison grievance system).

Defendants argue that the undisputed facts demonstrate that they did not impede Plaintiff's right to petition the government for redress of grievances. (Mot. at 9.) They point to the fact that in his deposition, Plaintiff acknowledged that the Facility has a mechanism for inmates to file grievances and that he admits that the records contain "an abundance" of grievances which he filed at the Facility. (Mot. at 9; Norton Del., Ex. A, Silverman Depo. 35:22-36:12, 42:10-13.) The evidence submitted by Defendants shows that during the first few weeks of his arrival at the Facility, Plaintiff filed 17 grievances, and that the Facility responded to each of these grievances. (Christian Decl. ¶ 9, Ex. B.) After reviewing the 17 grievances filed up to October 30, 2016, the Facility staff determined that the nature and number of grievances he had filed warranted placing Plaintiff on frivolous grievance watch, as authorized by Title 15 and the Facility's Policy. (*Id.* ¶ 18.) After being given written notice of being placed on frivolous grievance watch, Plaintiff continued to submit grievances, some of which were rejected as frivolous and some of which were not. (*Id.*; *id.* ¶ 21.) In 2017, Plaintiff filed 100 grievances, 59 of which were answered and 41 of which were rejected and returned as frivolous. (*Id.*, ¶ 21, Ex D.) In 2018, Plaintiff filed approximately 196 grievances, 98 of which were answered and 98 were either rejected or returned as frivolous. (*Id.* ¶ 22, Ex. D.) Many of the rejections were due to the grievances being requests or related to disciplinary process, both

of which required different procedures. (*Id.* ¶ 24.) In sum, Plaintiff filed over 250 grievances during the two-year period. (Christian Decl. ¶ 23, Exs. B, D.)

Lastly, with respect to the claim that Plaintiff was denied the right to file a grievance, Defendants assert that Plaintiff stated in his deposition that "every issue I wanted to submit eventually I put on paper." (Silverman Depo. 47:3-4.) Furthermore, Plaintiff stated that he never actually requested a grievance form from either Defendant Christian or Flint. (*Id.* at 55:21; Christian Decl. ¶ 25; Flint Decl. ¶ 6.) Based on these facts alone, Defendants assert that it is undisputed that neither Flint nor Christian could have denied Plaintiff the ability to file a grievance.

In opposition, Plaintiff takes issue with how the Policy is being applied and provides definitions for each word used therein in support of his argument that Defendants violated the inmate grievance procedure policy. (Opp. at 3-6, 7.) Plaintiff asserts that the fact that he was able to file a "qualifying complaint" which was not procedurally processed is unlawful. (*Id.* at 8.) Then Plaintiff proceeds in the remaining pages of his 52-page opposition to explain in detail why his first 17 grievances were meritorious and then why certain grievances that were marked as "frivolous" should have been accepted and processed. (*Id.* at 11-47.) In reply, Defendants first assert that Plaintiff's lengthy opposition violates the 25-page limitation under Local Rule 7-3(a), and therefore urge that pages 26-52 should be stricken. (Reply at 1.) Defendants then assert that the issue in this lawsuit is not whether Plaintiff's placement on frivolous grievance watch was proper or whether the individual grievances should have been returned as frivolous but rather whether Plaintiff was permitted to submit grievances at all. (Reply at 1.)

The Court agrees that pages 26-52 of the opposition should be stricken as violating Local Rule 7-3(a), which does not negatively impact Plaintiff because these stricken pages contain irrelevant arguments that certain grievances were improperly marked as frivolous by Defendants. Even if it were true that Defendants improperly failed to process these

11

"frivolous" grievances, their actions, without more, are not actionable under § 1983. *See Buckley*, 997 F.2d at 495; *Flick*, 932 F.2d at 729. The only issue in this First Amendment claim, as properly identified by Defendants, is whether Plaintiff was permitted to file grievances at all. *See Hines*, 853 F. Supp. at 333.

It is undisputed that Plaintiff was permitted to file grievances at the Facility and that he did so in "an abundance." (Norton Del., Ex. A, Silverman Depo. 35:22-36:12, 42:10-13.) Plaintiff admits that "every issue I wanted to submit eventually I put on paper, but it was not attended to professionally, it was not attended to properly, ethically, respectfully, humanely." (*Id.* at 47:3-6.) Plaintiff was clearly dissatisfied with the responses he received from Defendants, even though he attempts to characterize these responses as "rejections" in order to assert a First Amendment violation. But Plaintiff does not dispute the fact that during his two years at the Facility, he filed approximately 250 grievances: during 2017, he filed 100 grievances, and in 2018, nearly double that at 196. *See supra* at 7. Even after being placed on frivolous grievance watch after his first month at the Facility, Plaintiff filed grievances with increasing frequency. *Id.* Furthermore, each one of his grievances was screened to determine whether it was frivolous or merited an answer. *Id.* As such, it cannot be said that Plaintiff was denied his right to petition the government for redress of grievances when he was continually permitted to file as many grievances as he desired, even though numerous ones were rejected as frivolous. At no time did Defendants categorically refuse to accept grievances from Plaintiff and screen them.

Based on the foregoing, Defendants have established the absence of a genuine issue of material fact with respect to the First Amendment claim against them. *See Celotex Corp.*, 477 U.S. at 323. In response, Plaintiff has failed to identify with reasonable particularity any evidence that precludes summary judgment. *See Keenan*, 91 F.3d at 1279. Accordingly, Defendants are entitled to summary judgment on this claim. *Id.*; *see Celotex Corp.*, 477 U.S. at 323.

12

**CONCLUSION**

For the reasons stated above, Defendants Duane Christian and Dean Flint's motion for summary judgment is **GRANTED**. The First Amendment claim against them is **DISMISSED** with prejudice.

This order terminates Docket No. 35.

**IT IS SO ORDERED.**

Dated: September 3, 2019

/s/ Beth Labson Freeman
BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.18\01115Silverman_grant-msj

13